**FILED**

MAR 1 3 2024

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **4:24CR121 JAR/NCC** |
| v. | ) | |
| | ) | |
| CRAIG A. SPIEGEL, M.D., and | ) | |
| APRIL BINGHAM, | ) | |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

The Grand Jury charges:

## BACKGROUND

### A. Defendants

1.      At all times relevant to this indictment, defendant Craig A. Spiegel, M.D. ("Spiegel") was a medical doctor, licensed to practice medicine in the state of Missouri. Beginning at least as early as 2014, Spiegel owned and operated a pediatric clinic located at 12255 DePaul Drive, Suite 380, Bridgeton, Missouri 63044 in St. Louis County and the Eastern District of Missouri ("the Clinic").

2.      Defendant April Bingham ("Bingham") has never held any medical licenses or received any sort of medical training. Bingham met Spiegel in or about 2017 through a friend who described Spiegel as a doctor who would sign medical records in exchange for sexual favors.

### B. Controlled Substances

3.      Federal and state law classify certain prescription medications as "controlled substances." Controlled substances are drugs that have some potential for abuse or dependence.

4.      In order to prescribe controlled substances, a licensed health care professional, such as a physician, must obtain a registration number from the Drug Enforcement Administration ("DEA") and must comply with all DEA regulations and all applicable federal laws.  Controlled substances may be dispensed lawfully by means of a prescription issued by an individual DEA-registered practitioner, such as a physician, if the prescription is issued for a legitimate medical purpose by the individual DEA-registered practitioner acting in the usual course of his or her professional practice.  21 C.F.R. § 1306.04(a).

5.      Controlled substances are placed into five schedules, based on the potential for abuse and the severity of the effects if a person abuses the drug.  Placement of a controlled substance within a schedule depends on the drug's medical use, potential for abuse, and risk of dependence.  21 U.S.C. § 812(b).

6.      Of the controlled substances that may be legally prescribed, schedule II controlled substances have the highest potential for abuse and may cause severe psychological or physical dependence.  21 U.S.C. § 812(b)(2).  Examples of schedule II controlled substances are oxycodone (contained in the brand name drug Percocet), hydrocodone (contained in the brand name drugs Lortab and Norco), and amphetamine/dextroamphetamine salts (also known by the brand name Adderall).

7.      Schedule III drugs are drugs with less potential for abuse than schedule II drugs but that nonetheless may still lead to "moderate or low physical dependence or high psychological dependence."  21 U.S.C. § 812(b)(3).  Schedule III drugs also have "a currently accepted medical use in treatment."  *Id.*  Examples of schedule III drugs include buprenorphine (brand names Suboxone and Butrans) and acetaminophen with codeine (sometimes called Tylenol No. 3).

2

8. Schedule IV drugs have a lower potential abuse than schedule III drugs but still may lead to physical or psychological dependence when abused. 21 U.S.C. § 812(b)(4). Examples of schedule IV drugs include alprazolam (brand name Xanax), diazepam (brand name Valium), and lorazepam (brand name Ativan).

9. Scheduled drugs have a street value and diversion potential. "Diversion" refers to the unauthorized transfer of any controlled substance from an individual or entity to another individual or entity.  In the context of a DEA-registered physician, diversion includes the issuing of a prescription for no legitimate medical purpose by the practitioner acting outside of the usual course of his or her professional practice.

10. At all times relevant to this Indictment, Spiegel was aware of certain indicators of diversion of controlled substances, commonly referred to in the medical community as "red flags." An example of such a "red flag" is refilling a controlled substance medication too far in advance of when the previous prescription was scheduled to run out based on the prescribed dosing and instructions.  Other examples of "red flags" are combinations of certain classes of drugs that are commonly known to enhance the euphoric or addictive effect of the medications.  An example of such a combination is comprised of an opioid, a benzodiazepine, and a stimulant and/or a muscle relaxer; this combination is colloquially known as the "holy trinity."  Spiegel knew that issuing prescriptions for controlled substances despite the presence of "red flags" was not only wrong, but also presented a danger to the well-being of the designated recipient of the controlled substances (i.e. the purported patient) and to the community at large if the recipient, in turn, sold or transferred the prescribed controlled substances to someone else.

11. At all times relevant to this Indictment, Spiegel was registered under the provisions of the Controlled Substance Act, 21 U.S.C. § 823 *et seq.*, as a practitioner and had been assigned

3

a DEA registration number ending in 6438 authorizing him to prescribe controlled substances under schedules II through V.

### C.  The Medicare Program

12.     The United States Department of Health and Human Services, through the Centers for Medicare & Medicaid Services (CMS), administers the Medicare program, which is a federal health benefits program for the elderly and disabled.

13.     Benefits are administered through different parts of the Medicare program, referred to as Part A, Part B, Part C, and Part D.  Part D is relevant to this case.

14.     Medicare Part D is an optional prescription drug benefit program.  42 U.S.C. § 1395w-101(a)(3)(A); 42 C.F.R. § 423.30(a).  It is based on a private market model.  Medicare contracts with private entities known as Part D "Plan Sponsors" to administer prescription drug plans and deliver Part D, *i.e.* prescription, benefits to enrolled beneficiaries.  Throughout the year, CMS makes monthly payments to the Part D Plan Sponsor for each Part D beneficiary enrolled in the plan.  42 C.F.R. § 423.329(a)(1).

15.     Medicare only covers drugs that are used for a medically accepted indication, which means a use that is approved under the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, or a use which is supported by one or more citations included or approved for inclusion in one of the specified compendia.  42 U.S.C. § 1395w-102(e)(1) & (e)(4); 42 U.S.C. § 1396r-8(g)(1)(B)(i) & (k)(6); 42 C.F.R. § 423.100.

16.     Prescriptions for controlled substances that are not issued for a legitimate medical purpose, such as for recreational use, are not for "medically accepted indications" and are therefore not covered Medicare Part D drugs. 42 U.S.C. § 1395w-102(e)(1).  Similarly, prescriptions for controlled substances that are not issued for a legitimate medical purpose, such as for recreational

4

use, are not "valid prescriptions" and are therefore not covered Medicare Part D drugs. 42 C.F.R. § 423.104(h).

17.     When a beneficiary has Part D coverage, he or she can take a physician's prescription to a participating pharmacy to have the prescription filled.  The pharmacy then seeks reimbursement for the prescription from the Part D sponsor and, in many cases (depending on the beneficiary's Part D plan), may seek a co-pay from the beneficiary, as well.  Thus, as a general matter, both the Medicare program and patients pay the cost of covered prescriptions.

### D.  The Medicaid Program

18.     MO HealthNet administers the Missouri Medicaid program, which is jointly funded by the State of Missouri and, through CMS, the federal government.  Missouri Medicaid reimburses health care providers for covered services and prescription medications provided to low-income Medicaid recipients.

19.     Medicaid provides coverage for prescription drugs only when used for medically accepted indications.  42 U.S.C. § 1396r-8(d)(1)(B)(i), (k)(3); 13 C.S.R. § 70-20.030.

**COUNTS 1 THROUGH 17**
**Illegal Distribution of Controlled Substances**
**21 U.S.C. § 841(a)(1) & 18 U.S.C. § 2**

The Grand Jury further charges that:

20.     The above allegations are incorporated by reference as if fully set out herein.

21.     From at least as early as in or about 2014 to at least as late as May 2023, Spiegel engaged in a practice of issuing controlled substance prescriptions for no legitimate medical purpose and outside of the usual course of his professional practice.

22.     More specifically, Spiegel repeatedly and frequently issued controlled substance prescriptions to numerous adult women—many of whom he met because he was their treating

5

pediatrician when they were children—in exchange for sexual acts and sexual photographs, without regard for the patient's medical condition or the medical necessity of the prescription. In a multitude of such instances, Spiegel issued such prescriptions even though he knew that the recipient of the controlled substance prescription had a substance use disorder and that issuing the prescription would endanger the recipient's mental wellbeing and physical safety.

23.     For example, C.S. received controlled substance prescriptions from Spiegel, who she met through a friend who advised her that Spiegel would write any prescription she desired if she gave him a "hand job" while topless. On numerous occasions thereafter, C.S. gave Spiegel a "hand job," typically at the Clinic, in exchange for prescriptions for controlled substances, including amphetamine/dextroamphetamine salts (a schedule II stimulant also known by its brand name, Adderall), oxycodone-acetaminophen (a schedule II narcotic also known by its brand name, Percocet), and alprazolam (a schedule IV benzodiazepine also known by its brand name Xanax). On other occasions, C.S. provided Spiegel with nude photographs of herself in exchange for the controlled substance prescriptions.

24.     Another individual, K.D., met Spiegel because he was her doctor when she was a child. In adulthood, Spiegel began issuing prescriptions for controlled substances to K.D. in exchange for photographs of her breasts, or, on some in-person occasions at the Clinic, after directing her to watch him masturbate while her breasts were exposed. Typically, Spiegel issued K.D. prescriptions for Adderall XR and extended release dextroamphetamine (both schedule II stimulants). Spiegel continued to prescribe these schedule II controlled substances to K.D. even after she admitted to Spiegel that she was diverting them to her minor child.

25.     Another adult woman, J.M., received controlled substance prescriptions from Spiegel in exchange for numerous sexual photographs. The controlled substances that Spiegel

6

issued to J.M. included hydrocodone-acetaminophen (also known by its brand name Lortab or Norco) and hydrocodone chlorpheniramine extended release suspension (also known by its brand name Tussionex), both schedule II controlled substances.  Spiegel continued to issue these types of prescriptions to J.M. even though, she repeatedly requested early refills of these medications, a common "red flag" of diversion, as Spiegel knew.

26.     Spiegel also regularly issued controlled substance prescriptions to N.L., who provided Spiegel sexual acts (sometimes at the Clinic and at times at N.L.'s home) and photographs in exchange for those controlled substance prescriptions, which were typically for mixed amphetamine salts (a schedule II stimulant), alprazolam (a schedule IV benzodiazepine), and—on at least a few occasions—hydrocodone-acetaminophen (a schedule II narcotic). Although Spiegel knew N.L. had a severe substance use disorder and was at high risk of overdose, he continued to prescribe her dangerous combinations of high-strength controlled substances (including the "holy trinity") while frequently pressuring her, via text messages, into committing sexual acts or sending nude photographs.  On April 4, 2022, at the age of 40 years old, N.L. was found deceased in her home due to an overdose.

27.     In engaging in the acts described above, Spiegel often exerted pressure on the women to whom he distributed controlled substances to engage in sexual acts with him.  For example:

        a. When C.S. told Spiegel that she had limited time to meet with him, he replied in a text, "In other words I will have 15 minutes to address your nipples."  He later added, "Hopefully we won't be rushed too much.  Wear less layers."

        b. After electronically transmitting controlled substance prescriptions to a pharmacy for K.D., Spiegel texted her, "Sent, even though I don't see boobs or

nipples." He then added, "You see, I sent the prescriptions assuming that you would hold up your end."

c.   When J.M. requested Spiegel to prescribe her a controlled substance, Spiegel replied, "Tomorrow, after I see you." He then asked her, "How are your tan lines?"

d.   In pressing N.L. for sexual photographs, Spiegel told her, "Surprise surprise. No pictures!!" Spiegel later added, "I guess there is no point in getting upset. Our interaction is usually a one way street. I do the things that I promised. You promise much, but seldom follow through. I am not sure why you waste your breath promising anything."

28.   Additionally, Spiegel knew that the controlled substance prescriptions that he issued to adult women were illegal. At times, he refused to issue certain prescriptions for fear of being caught, texting the requestors of the controlled substances messages such as: "I can't. The government is very intrusive lately"; "Too soon. The state is cracking down"; and "I can't. Sent the Norco relatively recently. The DEA is watching more carefully."

29.   On or about the dates listed below, in St. Louis, Missouri, in the Eastern Division of the Eastern District of Missouri and elsewhere, the defendant,

**CRAIG A. SPIEGEL, M.D.,**

aided and abetted by, and aiding and abetting others known and unknown to the Grand Jury, knowingly and intentionally distributed the substances listed below, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2, in that Spiegel issued prescriptions for the indicated controlled substances for no legitimate medical purpose and outside the usual course of his professional practice:

8

| Count | Recipient | Prescriber | Rx Fill Date | Rx Written Date | Controlled Substance | Schedule | Qty | Days Supply |
|---|---|---|---|---|---|---|---|---|
| 1 | C.S. | CRAIG SPIEGEL | 9/11/2021 | 9/11/2021 | DEXTROAMPHETAMINE-AMPHETAMINE 30 MG TABLET | II | 60 | 30 |
| 2 | C.S. | CRAIG SPIEGEL | 9/11/2021 | 9/11/2021 | ALPRAZOLAM 2 MG TABLET | IV | 60 | 30 |
| 3 | C.S. | CRAIG SPIEGEL | 9/23/2021 | 9/23/2021 | HYDROCODONE-ACETAMINOPHEN 10-325 MG TABLET | II | 40 | 7 |
| 4 | C.S. | CRAIG SPIEGEL | 4/30/2022 | 4/30/2022 | OXYCODONE-ACETAMINOPHEN 10-325 MG TABLET | II | 40 | 6 |
| 5 | K.D. | CRAIG SPIEGEL | 9/10/2021 | 9/10/2021 | DEXTROAMPHETAMINE ER 15 MG CAPSULE | II | 150 | 30 |
| 6 | K.D. | CRAIG SPIEGEL | 9/10/2021 | 9/10/2021 | ADDERALL XR 30 MG CAPSULE | II | 60 | 30 |
| 7 | K.D. | CRAIG SPIEGEL | 12/27/2021 | 12/27/2021 | DEXTROAMPHETAMINE ER 15 MG CAPSULE | II | 150 | 30 |
| 8 | K.D. | CRAIG SPIEGEL | 12/27/2021 | 12/27/2021 | ADDERALL XR 30 MG CAPSULE | II | 60 | 30 |
| 9 | J.M. | CRAIG SPIEGEL | 10/5/2021 | 10/5/2021 | HYDROCODONE-CHLORPHENIRAMINE ER SUSPENSION | II | 70 | 7 |
| 10 | J.M. | CRAIG SPIEGEL | 12/10/2021 | 12/10/2021 | HYDROCODONE-ACETAMINOPHEN 5-325 MG TABLET | II | 60 | 7 |
| 11 | N.L. | CRAIG SPIEGEL | 1/29/2021 | 1/25/2021 | MIXED AMPHETAMINE SALTS 10 MG TABLET | II | 30 | 30 |
| 12 | N.L. | CRAIG SPIEGEL | 1/29/2021 | 1/28/2021 | ALPRAZOLAM 2 MG TABLET | IV | 90 | 30 |
| 13 | N.L. | CRAIG SPIEGEL | 2/11/2021 | 2/11/2021 | HYDROCODONE-ACETAMINOPHEN 10-325 MG TABLET | II | 40 | 6 |
| 14 | N.L. | CRAIG SPIEGEL | 10/2/2021 | 10/2/2021 | MIXED AMPHETAMINE SALTS 25 MG TABLET | II | 30 | 30 |
| 15 | N.L. | CRAIG SPIEGEL | 10/2/2021 | 10/2/2021 | ALPRAZOLAM 2 MG TABLET | IV | 75 | 25 |
| 16 | N.L. | CRAIG SPIEGEL | 12/3/2021 | 12/3/2021 | MIXED AMPHETAMINE SALTS 30 MG TABLET | II | 30 | 30 |

9

| Count | Recipient | Prescriber | Rx Fill Date | Rx Written Date | Controlled Substance | Schedule | Qty | Days Supply |
|-------|-----------|------------|--------------|-----------------|---------------------|----------|-----|-------------|
| 17 | N.L. | CRAIG SPIEGEL | 12/3/2021 | 12/3/2021 | ALPRAZOLAM 2 MG TABLET | IV | 90 | 30 |

All in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

## COUNT 18
## Conspiracy to Distribute Controlled Substances
## 21 U.S.C. § 846

The Grand Jury further charges that:

30.     The above allegations are incorporated by reference as if fully set out herein.

31.     Beginning at least as early as in or about 2021, and continuing to at least in or about April 2023, in St. Louis, Missouri, in the Eastern District of Missouri and elsewhere, the defendants,

### CRAIG A. SPIEGEL, M.D., and
### APRIL BINGHAM,

knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to commit the following offenses against the United States: to distribute controlled substances for no legitimate medical purpose and outside the usual course of professional practice, in violation of Title 21, United States Code, Section 841(a)(1).

### Manner and Means of the Conspiracy

The defendants accomplished and attempted to accomplish the objects of the drug trafficking conspiracy in the following manner and through the following means:

32.     Beginning in or about 2021, Spiegel conspired with Bingham to illegally distribute prescription controlled substances.

33.     It was part of the drug trafficking conspiracy that Spiegel and Bingham, an

10

individual without any medical training and without a DEA registration, agreed to distribute controlled substances under Spiegel's DEA registration and using prescriptions for controlled substances that Spiegel issued, for no legitimate medical purpose and outside the usual course of professional practice.

34.     It was further part of the drug trafficking conspiracy that Spiegel issued controlled substance prescriptions to Bingham in exchange for sexual favors, and that Spiegel knew that Bingham was, in many instances, selling the drugs that Spiegel prescribed to her for cash.

35.     It was further part of the drug trafficking conspiracy that, at Bingham's requests, Spiegel agreed to prescribe controlled substances to Bingham using the identities of third-party individuals, including Bingham's ex-husband, mother, and friends.  The purpose of using third-party identities was sometimes to take advantage of such individuals' prescription insurance benefits, and was sometimes to conceal from pharmacies the high frequency with which Bingham was receiving controlled substances prescribed by Spiegel.

36.     It was further part of the drug trafficking conspiracy that Bingham introduced Spiegel to new individuals, known and unknown to the Grand Jury, some of whom paid Spiegel in cash for prescriptions for controlled substances, and some of whom provided sexual favors to Spiegel in exchange for prescriptions for controlled substances.

All in violation of 21 U.S.C. § 846.

### COUNTS 19 THROUGH 25
### False Statements Related to Health Care Matters
### 18 U.S.C. §§ 1035 & 2

The Grand Jury further charges that:

37.     The above allegations are incorporated by reference as if fully set out herein.

38.     At all times relevant to this Indictment, Spiegel, in addition to issuing invalid prescriptions for controlled substances as described above, also issued non-controlled substance prescriptions to adult women, without making a determination of medical necessity, in exchange for sexual acts and photographs.

39.     As Spiegel knew, many of the non-controlled substance prescriptions that he issued without making a medical necessity determination were presented to pharmacies for reimbursement by federal health care programs, including Medicare and Medicaid.

40.     In addition, as Spiegel knew, many of the prescriptions for controlled substances that Spiegel issued for no legitimate medical purpose and outside of the usual course of professional practice, were presented to pharmacies for reimbursement by federal health care programs, including Medicare and Missouri Medicaid.

41.     If Medicare and Medicaid had known that Spiegel's prescriptions for controlled and non-controlled substances were issued in exchange for sexual favors or photographs, without making a determination of medical necessity, Medicare and Medicaid would not have made payments in relation to the claims associated with such prescriptions.

42.     If Medicare and Medicaid had known that Spiegel's prescriptions for controlled and non-controlled substances were issued in exchange for cash, without making a determination of medical necessity, Medicare and Medicaid would not have made payments in relation to the claims associated with such prescriptions.

43.     On or about the dates listed below, in St. Louis, Missouri, in the Eastern Division of the Eastern District of Missouri and elsewhere, the defendant,

**CRAIG A. SPIEGEL, M.D.,**

aided and abetted by, and aiding and abetting and others known and unknown to the Grand Jury,

knowingly and willfully made and used materially false writings and documents, knowing the

same to contain materially false, fictitious, and fraudulent statements and entries, in connection

with the delivery of and payment for health care benefits, items, and services involving the

Medicare and Missouri Medicaid programs, both health care benefit programs as defined in 18

U.S.C. § 24(b), in violation of 18 U.S.C. § 1035, in that Spiegel falsely represented by issuing

prescriptions for controlled and non-controlled substances that he had made a determination that

the controlled and non-controlled substances therein prescribed were medically necessary, when

Spiegel then and there well knew the prescriptions were not reimbursable by the Medicare and

Missouri Medicaid programs, and then and there well knew the representations contained in those

prescriptions were false, fictitious, and fraudulent, as follows:

| Count | Program Beneficiary | Prescriber | Claim Date | Drug | Schedule | Qty | Days Supply | Total Paid | Medicare or Medicaid |
|-------|--------------------|-----------|-----------|------|----------|-----|------------|-----------|---------------------|
| 19 | C.S. | CRAIG SPIEGEL | 9/13/2021 | ALPRAZOLAM 2 MG TABLET | IV | 60 | 30 | $15.38 | Medicare |
| 20 | C.S. | CRAIG SPIEGEL | 9/23/2021 | HYDROCODONE-ACETAMINOPHEN 10-325 MG TABLET | II | 40 | 7 | $23.32 | Medicare |
| 21 | C.S. | CRAIG SPIEGEL | 4/30/2022 | OXYCODONE-ACETAMINOPHEN 10-325 MG TABLET | II | 40 | 6 | $23.20 | Medicare |
| 22 | S.H. | CRAIG SPIEGEL | 8/10/2022 | CLINDAMYCIN HCL 300 MG CAPSULE | None | 30 | 10 | $20.50 | Medicaid |
| 23 | K.D. | CRAIG SPIEGEL | 9/10/2021 | DEXTROAMPHETAMINE SULFATE ER 15 MG TABLET | II | 150 | 30 | $308.95 | Medicaid |
| 24 | K.D. | CRAIG SPIEGEL | 11/2/2021 | DEXTROAMPHETAMINE SULFATE ER 15 MG TABLET | II | 150 | 30 | $279.94 | Medicaid |
| 25 | K.D. | CRAIG SPIEGEL | 11/2/2021 | ADDERALL XR 30 MG CAPSULE | II | 60 | 30 | $423.45 | Medicaid |

All in violation of 18 U.S.C. §§ 1035 & 2.

13

## FORFEITURE ALLEGATION

1.      The allegations contained in Counts 1 through 17 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

2.      Pursuant to Title 21, United States Code, Section 853, upon conviction of an offense in violation of Title 21, United States Code, Section 841, the defendant, CRAIG A. SPIEGEL, M.D., shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses.

3.      The allegations contained in Count 18 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

4.      Pursuant to Title 21, United States Code, Section 853, upon conviction of an offense in violation of Title 21, United States Code, Section 846, the defendants, CRAIG A. SPIEGEL, M.D., and APRIL BINGHAM, shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense.

5.      The allegations contained in Counts 19 through 25 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(7).

6.      Upon conviction of the offenses in violation of Title 18, United States Code,

14

Section 1035 set forth in Counts 15-21 of this Indictment, the defendant, CRAIG A. SPIEGEL, M.D., shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses

       7.     If any of the property described above, as a result of any act or omission of the defendants, CRAIG A. SPIEGEL, M.D., and APRIL BINGHAM,

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), including, but not limited to, a money judgment in an amount equivalent to any sum subject to forfeiture as described above.

A TRUE BILL

_____

FOREPERSON

SAYLER A. FLEMING
United States Attorney


_____
AMY E. SESTRIC, #66219MO
Assistant United States Attorney

15